IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

Jeff Arlando King                                                                                          Plaintiff

v.                                       No. 5:14–CV–066-JM-HDY

Carolyn W. Colvin, Acting Commissioner,
Social Security Administration                                                                  Defendant

### Recommended Disposition

#### Instructions

The following recommended disposition will be sent to U.S. District Judge James M. Moody, Jr. A party to this dispute may file and serve written objections to this recommendation. An objection must be specific and state the factual and/or legal basis for the objection. An objection to a factual finding must identify the finding and the evidence supporting the objection. Objections must be filed with the clerk of the court no later than 14 days from the date of this recommendation.[1] Failing to object within 14 days may waive the right to appeal questions of fact.[2] An objecting party who seeks to submit new, different, or additional evidence, or to obtain a hearing for that purpose, must address the following matters as part of written objections: (1) why the record before the magistrate judge was inadequate, (2) why the evidence was not presented to

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

the magistrate judge, and (3) details and/or copies of any testimony and/or documents to be proffered at a hearing. Based on this submission, Judge Moody will determine the need for a hearing.

## Reasoning for Recommended Disposition

Jeff Arlando King seeks judicial review of the denial of his third application for supplemental security income (SSI).[3] King used to work in construction.[4] It's not clear when he last worked; he has few reported earnings.[5] On August 19, 2008 — when he applied for SSI — King claimed to be disabled since February 1, 1999; he later amended his onset date to March 10, 2010, six months before turning age 50 and asked for application of the borderline rule.[6] King bases disability on pinched nerves, personality disorder and degenerative bone disease.[7]

---

[3]SSA record at p. 196 (alleging disability beginning Feb. 1, 1999).

[4]*Id*. at pp. 34, 57, 228 & 236.

[5]*Id*. at p. 199.

[6]*Id*. at pp. 55-56. Under the borderline rule, the ALJ can consider and apply an older age category if the claimant is within a few days or a few months of reaching the older age category, and using the older age category would result in a determination that the claimant is disabled. *See* 20 C.F.R. § 404.1563(b) ("If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.").

[7]SSA record at p. 227.

**The Commissioner's decision**.  Initially, the Commissioner's ALJ found King had severe impairments — status post right ankle fracture, status post head trauma, degenerative disc disease, degenerative joint disease, and alcohol dependence.[8]  The ALJ determined that considering alcohol dependence, King was disabled because there was no work he could do.[9]  Alcohol abuse was a contributing factor material to the determination of disability, and thus, King was not eligible for SSI.  Excluding alcohol abuse, the ALJ determined King was not disabled because he could do some light work.[10]

King asked the Appeals Council to review his claim.[11]  After reviewing the claim, the Appeals Council remanded the case because the ALJ failed to explain the basis for rejecting agency medical opinion that King was limited to sedentary work.[12]  The Appeals Council directed the ALJ to obtain recent medical evidence.

On remand, the ALJ explained why he rejected agency medical opinion and determined that King can do some light work.[13]  The ALJ found no evidence that

---

[8]*Id*. at p. 81 (first unfavorable decision dated Oct. 21, 2010).

[9]*Id*. at p. 84.

[10]*Id*. at p. 86.

[11]*Id*. at p. 148.

[12]*Id*. at pp. 96-97.

[13]*Id*. at p. 14 (second unfavorable decision dated Oct. 15, 2012).

alcohol abuse had interfered with King's ability to work since his amended onset date.[14] Because a vocational expert identified available work for a person with King's impairments,[15] the ALJ concluded that King is not disabled and denied the application.

After the Appeals Council denied a request for review,[16] the ALJ's second decision became a final decision for judicial review.[17] King filed this case to challenge the decision.[18] In reviewing the decision, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[19] This recommendation explains why substantial evidence supports the decision and why the ALJ made no legal error.

---

[14]*Id*. at pp. 16-17.

[15]*Id*. at p. 71.

[16]*Id*. at p. 1.

[17]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[18]Docket entry # 1.

[19]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

**King's allegations of error**. King challenges the determination that he can do some light work. He contends the ALJ failed to identify all of his impairments. This error, he claims, resulted in two additional errors: an improper determination about whether the combination of his impairments meets a listing and an erroneous decision about whether work exists that he can do. He characterizes the evaluation of his credibility as meaningless boilerplate. He contends the ALJ failed to properly develop the record on remand. For these reasons, he maintains substantial evidence does not support the ALJ's decision.[20]

**Applicable legal principles**. For substantial evidence to support the decision, a reasonable mind must accept the evidence as adequate to show King can do some light work.[21]

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.[22]

The ALJ placed the following limitations on light work:

(1) King cannot frequently bend, crouch, climb, or reach overhead; and

---

[20]Docket entry # 16.

[21]*Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009); *Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990).

[22]20 C.F.R. § 416.967(b).

>(2) he needs work involving incidental interpersonal contact, tasks learned and performed by rote, few variables, little judgment, and simple, direct, concrete supervision.[23]

The court must determine whether a reasonable mind would accept the evidence as adequate to show King can work with these limitations.

**Substantial evidence exists**.  When asked why he can no longer work, King described numerous problems: all discs in his neck are collapsing; paralysis and numbness in his arms, hands, and legs preventing gripping and climbing; muscle spasms and cramps; early stages of emphysema; excessive perspiration; sensitivity to heat; brittle bones; back pain preventing him from sleeping more than a few hours per night; and hip pain preventing walking.[24]  He insisted alcohol use has never interfered with his ability to work; he denied injuries shown in his medical records flowed from alcohol use.[25]  King's allegations are not enough to prove King is disabled; he must present "medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment … which could reasonably be expected to produce the pain or other symptoms alleged and

---

[23]SSA record at p. 19.

[24]*Id*. at pp. 57-61.

[25]*Id*. at pp. 63-66.

which … would lead to a conclusion that [King] is under a disability."[26]

    There are no medical signs or findings from medically acceptable clinical or laboratory diagnostic techniques showing medical impairment which can reasonably be expected to produce the symptoms King described.  Most of the medical evidence predates King's amended onset date.  That evidence shows a June 2008 right ankle fracture and January 2009 facial fractures,[27] but no follow-on treatment or complaints.  There are also some treatment notes for a few routine medical visits.  During those visits, King complained about arm, leg, and back pain, and asked for medication refills.[28]  Medical providers consistently instructed King to stop smoking and to stop drinking alcohol.

    The evidence from the time period for which benefits were denied — March 10,

---

[26] 42 U.S.C. § 423 (d)(5)(A).

[27] SSA record at p. 305 (emergency room visit on June 30, 2008), p. 311 (followup visit on July 16, 2008 & p. 316 (orthopedics consult on Sept. 11, 2008).

[28] *See id*. at p. 362 (medical visit on Dec. 4, 2008, he reporting being attacked and kicked in the face and head; back had decreased range of motion), p. 360 (medical visit on Dec. 18, 2008 for test results; decreased range of motion in back), p. 367 (emergency room visit on Jan. 14, 2009 for complaints of back and left leg pain; he had muscle spasms), p. 387 (emergency room visit on Jan. 22, 2009 for facial injury after an assault on Jan. 17, 2009), p. 380 (emergency room visit on Feb. 2, 2009 for same injuries; he smelled like alcohol and refused to allow medical staff to examine him; he left without being examined, but doctor thought his nose was broken), p. 432 (medical visit on Feb. 17, 2009 for complaints of left arm and leg pain, numbness, and tingling, anxiety, back pain, and sleep problems) & p. 431 (medical visit on Apr. 7, 2009; he reported sleeping better, but continued pain and shortness of breath).

2010 to October 15, 2012 — document less. That evidence consists of a May 2011 visit to an indigent care clinic and a January 2012 hospitalization. At the indigent care clinic, King complained about numbness in a joint, shoulder pain, back pain, and a sore spot on his head.[29] He asked for prescriptions for sleeping, back pain, and asthma. The provider's treatment note records no medical finding or laboratory test establishing an impairment.[30] The medical provider instructed King to return in four weeks, but King did not return.

During the January 2012 hospitalization, King was treated for multiple rib and clavicle fractures, and a right hand fracture.[31] He said he had been in a fight three days earlier and later fallen out of bed.[32] King was hospitalized for 10 days. During that time, diagnostic imaging showed a minimal amount of emphysema.[33] King was discharged in stable condition; he refused the sling prescribed for the clavicle fracture and the splint prescribed for his right hand.[34] Eight months later, during his second

---

[29]*Id*. at p. 429.

[30]*Id*. (diagnosing unspecified insomnia, unspecified backache, and unspecified asthma).

[31]*Id*. at p. 396.

[32]*Id*. at p. 397.

[33]*Id*. at p. 414.

[34]*Id*. at p. 396.

hearing, King attributed no impairment to the rib, clavicle, or right hand fractures.

King attempts to shift his burden to prove disability — by contending the ALJ failed to develop the record by not obtaining updated medical opinions or consultative evaluations — but King had the burden of providing medical evidence to prove disability.[35] The medical evidence shows little impairment. It shows nothing preventing lifting 20 pounds occasionally or 10 pounds frequently, doing a good deal of walking or standing, sitting, or pushing and pulling for arm or leg controls. Despite undergoing numerous medical exams, diagnostic imaging, and laboratory tests during the 10-day hospitalization, treatment records reflect no medical findings supporting King's claim.

A reasonable mind would accept the evidence as adequate to support the ALJ's decision because: (1) King's treatment records establish no impairment, and (2) King sought little medical treatment. King probably has some numbness and tingling in the arms and legs due to his history of alcohol abuse, but it's not severe enough to motivate him to seek treatment or to stop using alcohol. He may have some shortness of breath due to emphysema, but it's not severe enough to require treatment or to motivate King to stop smoking.

---

[35]*Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.").

King characterizes the evaluation of his credibility as meaningless boilerplate, but the ALJ provided sufficient reasons for discrediting King's credibility. The ALJ followed the required two-step process, considered the required factors,[36] and provided a sufficient explanation for discounting King's credibility. King's explanations for his injuries contradicted the medical evidence[37] to the extent of undermining his credibility.[38] As for whether the ALJ included all his impairments — he says, osteoarthritis, degenerative disc disease, and chronic back pain — the relevant medical evidence establishes only complaints of low back pain. King may have some back pain, but the limitation on bending, crouching, and climbing responded to that pain. King's limited education and his preference for social isolation supports the requirement for unskilled work with incidental interpersonal contact.

When asked about available work for a person with King's impairments, the vocational expert identified two representative jobs: production assembler and

---

[36]*See Policy Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7p (July 2, 1996).

[37]*Compare* SSA record at pp. 64-64 (testifying that his injuries New Year's Eve resulted from falling while installing a light fixture) *with id*. at pp. 396 & 409 (stating on New Year's Eve that he had been in a fight and fallen out of bed).

[38]*Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) ("The ALJ may discount complaints of pain if they are inconsistent with the evidence as a whole."); *Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011) ("The ALJ may discredit a claimant based on inconsistencies in the evidence.").

cleaner/housekeeping.[39]  No serious argument exists about whether King can do those jobs.  The vocational evidence shows work exists that King can do regardless of whether such work exists where he lives, whether a job vacancy exists, or whether he would be hired if he applied for work.[40]  Because such work exists, King is not disabled under social security law.

## Conclusion and Recommendation

A reasonable mind would accept the evidence as adequate to support the ALJ's decision; thus, substantial evidence supports the decision.  The ALJ made no legal error.  For these reasons, the undersigned magistrate judge recommends DENYING King's request for relief (docket entry #2) and AFFIRMING the Commissioner's decision.

Dated this  19th  day of December, 2014.

_____
United States Magistrate Judge

---

[39] SSA record at p. 71.

[40] 42 U.S.C. § 1382c(a)(3)(B) (defining disability under social security law).